Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800

United States District Court
Southern District of New York                              7:20-cv-05199

| | |
|---|---|
| Louise Gaskell, Jewel DeWitt, individually and on behalf of all others similarly situated,<br><br>                     Plaintiffs,<br><br>        - against -<br><br>Chobani, LLC,<br><br>              Defendant | Class Action Complaint |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.      Chobani, LLC ("defendant") manufactures, distributes, markets, labels and sells coffee creamer purporting to be flavored only with vanilla under the Chobani brand ("Product").

2.      The Product is available to consumers from retail and online stores of third-parties and is sold in bottles of 24 OZ.

3.      The relevant front label representations include "Chobani," "Nothing Artificial" and "Vanilla."



4.      The unqualified, prominent and conspicuous representation as "Vanilla" is false, deceptive and misleading because the Product contains non-vanilla flavors which imitate, resemble and extend vanilla's taste but are not derived from vanilla bean, yet these flavors are not disclosed to consumers on the front label as required and expected.

5.     62% of consumers surveyed by Nielsen say they try to avoid artificial flavors.[1]

6.     Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[2]

7.     Label Insight, a marketing company focused on consumer products, determined that 76% of consumers avoid products with artificial flavors.[3]

8.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla,

9.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[4]

10.     Vanilla's unique flavor and aroma is due to at least 200 compounds scientists have identified.[5]

11.     Re-creating the complexity and richness of "vanilla flavor" provided by vanilla beans is a task science has been unable to duplicate, which is why consumers are willing to pay more for products labeled solely with the term "Vanilla."

12.     These include volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."

13.     The non-volatile constituents include "tannins, polyphenols, free amino acids and resins."

14.     During the first half of the 20th century, "the widespread and exceedingly serious

---

[1] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[2] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[3] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[4] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.
[5] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.

adulteration of vanilla extracts that are now labeled 'pure'" was rampant, which resulted in consumers expecting vanilla but receiving its synthetic replacement, vanillin:[6]

> Misbranding was alleged for the further reason that the product was labeled and branded so as to deceive and mislead the purchaser thereof, in that said label was calculated and intended to create the impression and belief in the mind of the purchaser that the product was a genuine vanilla extract, whereas, in fact, it was a mixture of vanilla extract, vanillin, and coumarin, artificially colored with caramel.

> Notice of Judgment No. 2241, Adulteration and Misbranding of…Vanilla Extract, United States Department of Agriculture, W. M. Hays, Acting Secretary, Washington, D.C., January 23, 1913.

15.    Due to widespread fraud, vanilla became the only flavor for which a standard of identity was established, to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[7] *See* 21 C.F.R. § 169.175 – 21 C.F.R. § 169.182 (vanilla products); *see also* 1 NYCRR § 250.1(a)(17) ("the commissioner hereby adopts the following as the standards of identity…as published in…21 CFR part 169").[8]

16.    These standards require that where a product is labeled as "vanilla," the addition of non-vanilla flavors that increase and promote a vanilla taste are required to be declared as artificial flavors, so consumers are not misled. Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1966 ("The vanilla standard determines vanilla as a standardized product. If other flavorings are added, then the vanilla is no longer a standardized

---

[6] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA (the FDA stated, "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards").
[7] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.
[8] 1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1; 1.  New York State has adopted and incorporated in its entirety, all provisions of the Federal Food, Drug and Cosmetic Act ("FFDCA") through its Agriculture and Markets Law ("AGM") and the accompanying regulations. See Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").

product and should therefore be labeled artificial or imitation.").

17.    The vanilla standards offer an example for labeling a food that contains vanilla and non-vanilla flavor. *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract") (where food is flavored with vanilla and vanillin (from non-vanilla sources), it must inform consumers that it "'contains vanillin, an artificial flavor (or flavoring)'" on the ingredient list and front label. *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract").

18.    In labeling products with a primary characterizing flavor of vanilla, the vanilla standards take precedence over the general flavor regulations where they may otherwise be in conflict. *See* 21 U.S.C. 343(g); *see also* 21 C.F.R. § 169.175-182 (vanilla products) *compare with* 21 C.F.R. § 101.22(i).

19.    The Product's front label of "Vanilla" without other terms such as "flavored," "other natural flavor," "artificially flavored" or "naturally flavored" means that only vanilla ingredients provide its taste. *See* 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'"); *see also* 21 C.F.R. § 101.22(i)(1)(iii) (requiring front label disclosure of "other [than from the characterizing flavor] natural flavor which simulates, resembles or reinforces the characterizing flavor").

20.    The Product's ingredient list reveals it contains more non-vanilla "natural flavors" than "vanilla extract."

**Ingredients**: Milk, cream, cane sugar, natural flavors, vanilla extract.

21.    Though the ingredient list designates "natural flavors," the front label includes no reference to any non-vanilla flavors.

22.    For the Product's "natural flavors" to avoid being mentioned on the front label, they would have to provide a taste sensation completely unrelated to vanilla.

23.    It is implausible and illogical that a product would be characterized as vanilla on the one hand and then try to add flavors that minimize, instead of amplify vanilla.

24.    In fact, the Product's "natural flavors" enhance, resemble, simulate, reinforce and extend the "complex array of flavor notes and aromas" by providing, among other things, creamy, sweet and vanilla-like notes.[9]

25.    Even though these non-vanilla flavors are not chemically identical to "vanilla extract," their addition to the Product requires disclosure.

26.    Consumers cannot be expected to know intricate labeling regulations for vanilla ingredients and the array of flavor compounds companies use to boost and simulate vanilla, which makes defendant's representation of the Product as "Vanilla," without more, deceptive and misleading.

27.    A reasonable consumer cannot follow up or learn the truth that the Product's "natural flavors" should be labeled as "artificial flavors" because such flavors affect the amount of vanilla used and provide flavor notes associated with vanilla.

---

[9] Vanilla, Taste Foundations, Virginia Dare Company.

28.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiffs and consumers.

29.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiffs.

30.    The value of the Product that plaintiffs purchased and consumed was materially less than its value as represented by defendant.

31.    Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them.

32.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $4.49 for bottles of 24 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

33.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

34.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

35.    The amount in controversy exceeds the threshold required because defendant sells the Product in thousands of stores throughout this state and is available online for shipment within this state.

36.    Plaintiff Louise Gaskell is a citizen of Colorado.

37.    Defendant Chobani, LLC is a Delaware limited liability company with a principal

7

place of business in Norwich, Chenango County, New York and although one member of defendant may be a citizen of New York, upon information and belief, at least one member of defendant is not a citizen of New York.

38.    "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

39.    Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this district, *viz*, the purchase of the Product by plaintiff DeWitt and the misleading representations relied upon by plaintiff DeWitt.

40.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

<u>Parties</u>

41.    Plaintiff Louise Gaskell is a citizen of Loveland, Larimer County, Colorado.

42.    Plaintiff Jewel DeWitt is a citizen of Port Jervis, Orange County, New York.

43.    Defendant Chobani, LLC is a Delaware limited liability company with a principal place of business in Norwich, New York, Chenango County.

44.    Defendant sells the Product to stores throughout the state including grocery stores and big box stores.

45.    During the relevant statutes of limitations, plaintiffs purchased the Product within their districts and/or State for personal consumption and/or use in reliance on the representations the Product's vanilla taste was only provided by vanilla.

46.    Plaintiff DeWitt purchased the Product from ShopRite in Middletown, New York on occasions which may include but are not limited to the summer of 2019.

47.    Plaintiff Gaskell purchased the Product from King Soopers in Loveland, Colorado on occasions which may include but are not limited to May and/or June 2020.

48.     Plaintiffs cannot be assured the Product's labeling in the future will be accurate even though they would like to purchase the Product provided its label and/or components are changed so they are no longer misleading.

Class Allegations

49.     The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

50.     Plaintiffs will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

51.     Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

52.     Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

53.     Plaintiffs are adequate representatives because their interests do not conflict with other members.

54.     No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

55.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

56.     Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

57.     Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

58.     Plaintiffs incorporate by reference all preceding paragraphs.

59.     Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

60.     Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

61.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

62.     The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

63.     Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

64.     Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

65.     Plaintiffs incorporate by reference all preceding paragraphs.

66.     Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

67.     The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

68.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

69.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

70.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

71.    Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

72.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

73.    Plaintiffs incorporate by reference all preceding paragraphs.

74.    The Product was manufactured, labeled and sold by defendant and warranted to plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

75.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

76.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

77.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

78.    This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

79.    Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

80.    Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product.

81.    The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

82.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

83.    Plaintiffs incorporate by reference all preceding paragraphs.

84.    The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

85.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

86.    Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

87.     Plaintiffs incorporate by reference all preceding paragraphs.

88.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

  **WHEREFORE**, Plaintiffs pray for judgment:

1.  Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   July 7, 2020

                                                            Respectfully submitted,

                                                            Sheehan & Associates, P.C.
                                                            /s/Spencer Sheehan
                                                            Spencer Sheehan
                                                            505 Northern Blvd Ste 311

Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-05199
United States District Court
Southern District of New York

Louise Gaskell, Jewel DeWitt, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

Chobani, LLC,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  July 7, 2020

/s/ Spencer Sheehan
Spencer Sheehan